# EXHIBIT 1

CD

| Summons | CIVIL DOCKET NO. 2584CV01092 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME:<br><br>Jeffrey T. Dillon<br>Plaintiff(s)<br>vs.<br>PerkinElmer, U.S. LLC<br><br>Defendant(s) | | John E. Powers III    Clerk of Courts<br>Suffolk    County<br>COURT NAME & ADDRESS:<br>Suffolk Superior Civil Court<br>Three Pemberton Square<br>Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO  PerkinElmer U.S. LLC  (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the  Suffolk Superior  Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior Court 3 Pemberton Sq., Boston, MA 02108 (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

    b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:
Robert R. Berluti, Esq.
Berluti McLaughlin & Kutchin LLP
44 School St., 9th Fl., Boston, MA 02108

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Michael D. Ricciuti, Chief Justice on May 5, 20 25. (Seal)

Acting Clerk

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS



Suffolk County Sheriff's Department • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

Suffolk, ss.

May 14, 2025

I hereby certify and return that on 5/13/2025 at 8:50 AM I served a true and attested copy of the Summons, Complaint and Cover Sheet in this action in the following manner: To wit, by delivering in hand to Tasha Mann, agent and person in charge at the time of service for PerkinElmer US LLC, at CT Corporation System 155 Federal Street Suite 700 Boston, MA 02110 .. Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($1.00) Administrative Fee ($15.00) Deputy Expense ($5.00) Total: $57.30

Deputy Sheriff    Joseph Casey

_Deputy Sheriff_

Date:

rev. 1/2023

# COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, SS. | SUPERIOR COURT DEPARTMENT<br>CIVIL ACTION NO.: |

```
_____
                               )
JEFFREY T. DILLON,             )
                               )
      Plaintiff                )
                               )
v.                             )
                               )
PERKINELMER, U.S. LLC,         )
                               )
      Defendant                )
_____)
```

## COMPLAINT

Plaintiff, Jeffrey Dillon ("Dillon"), by way of complaint against his former employer, Defendant, PerkinElmer U.S. LLC ("PerkinElmer"), hereby alleges as follows:

## PARTIES

1.  Dillon is an individual with a residence in Hingham Massachusetts.

2.  PerkinElmer is a world-wide organization which does business in Massachusetts and throughout the United States. Based on the information filed with the Office of the Secretary of the Commonwealth of Massachusetts, PerkinElmer maintains a principal office at 710 Bridgeport Avenue, Shelton, CT 06484 and utilizes CT Corporation System as a Registered Agent with an address of 155 Federal Street, Suite 700, Boston, MA 02110.

## JURISDICTION AND VENUE

3.  Jurisdiction is proper because PerkinElmer has a principal place of business in, and has sufficient contacts with, the Commonwealth of Massachusetts, and the amount in controversy exceeds $50,000.

4. Venue is proper because PerkinElmer's Resident Agent, CT Corporation System, has an address of 155 Federal Street, Suite 700, Boston, Suffolk County, Massachusetts.

## FACTS

5. PerkinElmer hired Dillon in 2021 as Director of OneSource Enterprise Sales for North America.

6. At the end of 2021, Dillon's Manager, John Luck ("Luck"), provided him with his 2021 Year-End Assessment commenting that Dillon:

> Demonstrated solid success this past year in developing a passionate Team w/strong focus. At all times engaging and driving core values, with consistent communications/actions. Delivered/exceed financials per the budget, and continued to build pipeline to ensure 2022 success. Challenges were met directly and without hesitation, and plans created to address. Thanks.

7. At the end of 2022, Dillon received a similar Year End Assessment albeit for 2022 it was verbal and not written.

8. In 2022, PerkinElmer selected. Dillon to receive the PKI Award for Commercial Excellence.

9. On or about March 2023, New Mountain Capital acquired a portion of PerkinElmer's business for $2.45 billion.

10. In March 2023, Dirk Bontridder, the Chief Executive Officer, informed Dillon that in recognition of [his] contributions and steadfast commitment to PerkinElmer he was eligible to receive a retention bonus for a period of two years, $25,000 for 2023 (paid in March 2024) and $25,000 for 2024 payable within 30 days of the second anniversary of March 13, 2023 payable in 2025. In March of 2024, Dillon received the retention bonus. He was not paid his retention bonus for 2024 as a result of his wrongful termination.

2

11. In 2023, Dillon's manager, Luck, left PerkinElmer and Dillon began reporting to Gary Grecsek ("Grecsek"), the Chief Services Officer.

12. On or about June 2023, Grecsek informed Dillon that beginning in January 2024, he would be elevated to a role with expanded responsibilities. One of PerkinElmer's divisions was known as OneSource. Dillon was hired for sales.

13. Beginning in January 2024 he would also be responsible for OneSource services in North America.

14. Although Dillon had no direct service experience, Grecsek promoted Dillon to be responsible for both sales and service of One Source.

15. In October 2023, Dillon attended a leadership meeting called the "Arizona Summit" along with several other company leaders. Dillon did not have a specific role at this conference. Grecsek also attended this conference.

16. Dillon did make a presentation to a small group of 6-10 people that lasted no more than fifteen minutes. The topic was the sales performance of the Americas Team. It was factual in summarizing the performance to date. It included the sales representative's name, the account and product and the estimated closing date. Dillon received no feedback from this short meeting. Specifically, Grecsek did not send any communication expressing any concern about Dillon.

17. In January 2024, Dillon was promoted to Director OneSource Enterprise of Sales and Services.

18. After the New Mountain Capital transaction in March 2023, there were several organizational and personnel changes. Several employees left PerkinElmer. Dillon lost two sales

3

representatives. By the end of 2023, the negative changes caused Dillon to suffer severe stress and anxiety. He was diagnosed with high blood pressure.

19. In January 2024, Grecsek gave Dillon his Year-End Assessment for 2023. The overall rating was that Dillon did not meet expectations. The assessment referred to "pockets of success," referenced actions of his team for transformation was a highlight, and securing the J&J relocation as another success. However, it stated that the broader team needed to be driven to a higher level of performance.

20. Dillon did not agree with the assessment and did not sign the assessment. Grecsek, contradicting his assessment of Dillon, went forward with promoting him.

21. On or about February 26, 2024, Dillon attended a leadership meeting in San Diego, California. The CEO of PerkinElmer, Dirk Bontridder, brought in by New Mountain Capital, spoke to the assembled leaders and said, "we need to focus on hiring younger people."

22. In June 2024, Grecsek falsely accused Dillon of causing an employee to resign when the employee told Dillon he was leaving because of another employee and because of the environment overall.

23. On July 1, 2024, Grecsek and a human resources representative informed Dillon that he was being demoted to Business Development Executive, two positions below his position of Director of Sales and Service. PerkinElmer was not just demoting Dillon by taking the services role away, it was assigning him to a sales role with no management responsibility. He was also being placed on a performance improvement plan.

24. Company sales year to date for the America's were approximately Twelve Million Dollars ($12,000,000.00). The performance improvement plan called for Dillon to sell at least $3 Million to each of Moderna, Vertex and Johnson & Johnson over ninety days of July, August

4

and September for a total of Nine Million Dollars ($9,000,000.00). It was an impossible assignment, especially given the slower summer vacation months also the impossible timeline of 90 days given the way deals of this magnitude progress.

25. Dillon's health deteriorated. On August 25, 2024 at 6:50 P.M., Dillon emailed Shannon Nadeau ("Nadeau"), Associate HR Business Partner at PerkinElmer informing her he was suffering from a medical condition and under the supervision of a Physician. He said he needed to apply for short term disability, asked for her guidance on applying, and that he would be taking PTO days for the rest of the week.

26. Nadeau responded on August 26, 2024, attaching information on how to apply for short term disability through PerkinElmer's third-party provider, Sun Life. She then closed her email with the following question: Do you have an idea of the leave of absence you will need?

27. On August 27, 2024, Dillon then completed the application to Sun Life. Sun Life then faxed Dillon's Physician to complete the medical information. Dillon received a confirmatory email stating that all documents had been signed.

28. On August 30, 2024, four days after learning Dillon was disabled and would be seeking short term disability, Ms. Nadeau sent an email to Dillon (with a copy to Grecsek) informing Dillon that his employment with PerkinElmer was terminated for cause.

29. Dillon learned shortly thereafter that Sun Life was no longer processing his short term disability benefits application because he had been terminated by PerkinElmer

**COUNT I**
**AGE DISCRIMINATION UNDER G.L. c. 151B and the ADEA**

30. Dillon repeats and incorporates by reference the allegations in Paragraphs 1 through 29 as if the same were fully set forth at length herein.

31. Dillon is over 40 years old and thus in the protected age class.

5

32. Dillon performed his job as a sales executive at an acceptable level.

33. Dillon was placed on a performance improvement plan (PIP) and ultimately terminated before the time allotted in the PIP expired.

34. Dillon contends that he was terminated because of his age.

## COUNT II
## RETALIATION IN VIOLATION OF G.L. c. 151B, § 4(4)

35. Dillon repeats and incorporates by reference the allegations in Paragraphs 1 through 34 as if the same were fully set forth at length herein.

36. Dillon informed PerkinElmer that he was suffering from medical conditions that made him qualified for protections under the ADA and G.L. c. 151B. He informed PerkinElmer that he needed a leave of absence and to apply for short term disability benefits. Shortly thereafter PerkinElmer terminated his employment. The timing of the termination immediately following his short term disability application suggests retaliation and PerkinElmer's intentional effort to avoid liability under disability law.

37. In further retaliation, PerkinElmer has failed to pay Dillon all of his business expenses despite them having been submitted in accordance with the designated process and them being approved by Grecsek.

38. As a further act of retaliation, PerkinElmer has delayed and failed to pay Dillon reimbursable business expenses that he incurred while employed.

## COUNT III
## DISABILITY TERMINATION UNDER G.L. c. 151B and in VIOLATION OF THE AMERICANS WITH DISABILITY ACT

39. Dillon repeats and incorporates by reference the allegations in Paragraphs 1 through 38 as if the same were fully set forth at length herein.

6

40. Dillon was a qualified handicapped person suffering from high blood pressure and an adjustment disorder with anxiety and depression. He has difficulty concentrating, communicating and sleeping that could significantly impact his work.

41. PerkinElmer failed to accommodate Dillon's condition (e.g., not providing time off or engaging in an interactive process) and/or terminated him to avoid accommodating his condition, in violation of the ADA or Mass. G.L. c. 151B.

## COUNT IV
### (Breach of Contract)

42. Dillon repeats and incorporates by reference the allegations in Paragraphs 1 through 41 as if the same were fully set forth at length herein.

43. At all relevant times, Dillon was an employee of PerkinElmer as defined under Massachusetts law. PerkinElmer agreed to reimburse Dillon for business expenses he incurred in the course of his service as an employee.

44. By failing to pay Dillon for his business expenses, PerkinElmer has breached its agreement with Dillon

45. As a direct and proximate result of PerkinElmer's statutory violations, Dillon has suffered damages to be determined at trial.

## COUNT IV – VIOLATION OF THE MASSACHUSETTS WAGE ACT
### (M.G.L. c. 149, § 148)
### (Failure to Pay Earned Retention Bonus)

46. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" as defined by the Massachusetts Wage Act, M.G.L. c. 149, § 148 et seq.

7

48. Defendant offered Plaintiff a retention bonus as part of her compensation to incentivize continued employment through a specified date or event, and Plaintiff accepted this offer.

49. Plaintiff substantially performed all of the duties and conditions required under the retention bonus agreement and remained employed through the retention period or was prepared to do so but for her wrongful termination by Defendant, which was done in bad faith and without cause.

50. The retention bonus constituted "earned wages" under the Massachusetts Wage Act because Plaintiff satisfied the conditions precedent to its payment, or would have but for Defendant's bad faith conduct in terminating her employment to avoid payment.

51. Defendant's failure to pay the retention bonus upon the termination of Plaintiff's employment violated M.G.L. c. 149, § 148, which requires that discharged employees be paid all earned wages in full on the day of discharge.

52. As a result of Defendant's violation of the Massachusetts Wage Act, Plaintiff has suffered damages, including but not limited to the amount of the unpaid retention bonus.

53. Pursuant to M.G.L. c. 149, § 150, Plaintiff is entitled to mandatory treble damages, reasonable attorneys' fees, and the costs of this action.

**WHEREFORE**, Plaintiff, Jeffrey T. Dillon, seeks damages for:

   a. Back pay for lost wages from the date of termination;

   b. Front pay;

   c. Compensatory damages for pain and suffering, particularly for his emotional distress;

   d. Punitive damages;

    e.   Treble the amount of the unpaid retention bonus;

    f.   Attorney's fees and costs;

    g.   Such other relief as is deemed fair, just and reasonable.

## JURY DEMAND

Dillon request a trial by jury on all claims so triable.

Dated: April 23, 2025

Respectfully submitted,

**JEFFREY T. DILLON**,
By his attorneys,

*/s/ Robert R. Berluti*
Robert R. Berluti (BBO #039960)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
Tel: (617) 557-3030
Fax: (617) 557-2939
rberluti@bmklegal.com

9

# CIVIL ACTION COVER SHEET

**DOCKET NUMBER**

**Massachusetts Trial Court**
**Superior Court**

**COUNTY** Suffolk Superior Court (Boston)

| | |
|---|---|
| **Plaintiff** Jeffrey T. Dillon | **Defendant:** PerkinElmer U.S. LLC |
| ADDRESS: | ADDRESS: |
| **Plaintiff Attorney:** Robert R. Berluti, Esquire | **Defendant Attorney:** Katherine G. Rigby, Esquire |
| ADDRESS: Berluti McLaughlin & Kutchin LLP | ADDRESS: Epstein Becker & Green, P.C. |
| 44 School St., 9th Fl. | 125 High Street, Suite 2114 |
| Boston, MA 02108 | Boston, MA 02110 |
| BBO: 039960 | BBO: 676436 |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES  ☐ NO |

*If "Other" please describe: _____

**Is there a claim under G.L. c. 93A?**  ☐ YES  ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?**  ☐ YES  ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date
  1. Total hospital expenses
  2. Total doctor expenses — $10,000.00
  3. Total chiropractic expenses
  4. Total physical therapy expenses
  5. Total other expenses (describe below)

  Subtotal (1-5): $10,000.00

B. Documented lost wages and compensation to date — $133,000.00
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages — $200,000.00
F. Other documented items of damages (describe below) — $100,000.00

  emotional distress

TOTAL (A-F): $443,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Unlawful discrimination in violation of G.L. c.151B.

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X *Robert R. Berluti*    Date: April 23, 2025

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X *Robert R. Berluti*    Date: April 23, 2025

# CIVIL ACTION COVER SHEET INSTRUCTIONS — SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | __F__ | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.